24  487
34  146

[No. 3598.  Decided April 8, 1901.]

N. BOARDMAN, *Respondent,* v. A. W. HAGER *et al., Appellants.*

INTERVENTION — GROUNDS OF — ISSUE AFFECTING LAND IN OTHER COUNTY.

In an action to compel the issuance to plaintiff of stock in a mining company, wherein a complaint in intervention claiming an interest in a portion of the same stock is filed, the intervenor cannot ask for the rescission of a contract of conveyance of land in another county because of the fraud of one of the defendants in procuring a transfer of such stock in consideration of said conveyance.

APPEAL — STRIKING ALLEGATIONS OF ANSWER — CURED BY ADMISSION OF EVIDENCE.

Error of the court in striking a portion of the answer of defendants in not prejudicial when testimony in support of the stricken matter is subsequently admitted.

SAME — SUFFICIENCY OF EVIDENCE.

Where there is a substantial conflict in the testimony, the findings of the trial court will not be disturbed on appeal.

Appeal from Superior Court, King County.—Hon. WILLIAM HICKMAN MOORE, Judge. Affirmed.

*Milo A. Root,* for appellant Pulver.

*G. W. Somerindyke,* for respondent.

The opinion of the court was delivered by

REAVIS, C. J.—Respondent commenced this suit to compel the issuance to himself of a balance of 93,143½ shares of the stock of the Golden Tunnel Mining Company, which he claims to be due him pursuant to a written agreement. His complaint alleges, in substance: That at Seattle, on the 6th of December, 1898, respondent and John Thomas paid the defendants Hager and Gardner the sum of $700, in consideration of which the said

defendants, Hager and Gardner, agreed with respondent in writing; and the instrument is set out as follows:

"Seattle, Washington, Dec. 6th, 1898.

"In consideration of Seven Hundred Dollars (700), in hand paid, and the further consideration hereinafter mentioned we consent to incorporate immediately The Golden Tunnel Group of mining claims on a capitalization of One Million (1,000,000) Dollars.

Two Hundred Thousand Dollars of said stock to be placed in the Treasury. Sixty Thousand (60,000) shares of said Treasury stock to be used for the purpose of paying to Gardner and Hager, or whom they may direct, the sum of Seven Thousand and Three Hundred Dollars, ($7,300). On the payment of said Seven Thousand and Three Hundred Dollars ($7,300), to Gardner and Hager, or whom they direct, they, the said Gardner and Hager, will cause to be issued of the capital stock of said company One Hundred and Seventy-five Thousand shares (175,000) to John Thomas, and One Hundred and Seventy-five Thousand shares (175,000) to N. Boardman, or whom they may direct.

Geo. T. Gardner.
A. W. Hager."

That pursuant to such agreement, and for the purpose of carrying out its provisions, the defendant the Golden Tunnel Mining Company was incorporated, and the mining properties mentioned therein transferred by the defendants Hager and Gardner to the corporation, and accepted by it subject to the terms of the agreement. That such agreement was duly ratified by the corporation and the provisions complied with by the corporation, save the issuance of the full amount of stock due respondent. That the corporation defendant issued to respondent 81,856½ shares of stock, leaving a balance due him of 93,143½ shares of stock in the company. That since the incorporation of the company Hager has been, and now is, manager, and Gardner secretary, of the company, and they own the ma-

jority of the stock and controlling interest therein. The
defendant answered, denying generally the allegations of
the complaint, and then set out that the proposition men-
tioned in the complaint was first made orally by defend-
ants Gardner and Hager to John Thomas, C. W. Yancy,
and George Pulver, except that the name of N. Board-
man was not in the oral proposition, but the names of
Yancy and Pulver; that the said oral proposition was
accepted by Thomas, Yancy and Pulver; that Yancy re-
quested that the proposition be put in writing, and that
the name of Boardman should be used, instead of the
names of Yancy and Pulver, which request was granted;
that Boardman was not a party to the contract, or the
negotiations out of which the same arose; that pursuant to
the request and consent of Yancy and Pulver these de-
fendants have issued upon the order of Boardman 82,950$\frac{1}{2}$
shares of stock. These allegations were, upon motion,
stricken by the court. The answer further alleged that
Thomas, Yancy, and defendants Gardner and Hager en-
tered into an agreement among themselves to set aside a
certain amount of stock that the company should sell to
meet a claim of one Olson against the company; that it
was so agreed by Yancy and Boardman that 25,287 of the
175,000 shares mentioned in the written proposition to
be issued to Boardman should be so set aside and held
by the company for such purpose. This allegation of the
answer was substantially admitted at the trial. The ans-
wer further alleged that in June, 1899, Pulver orally noti-
fied defendants not to issue to Boardman, or any one,
except on his (Pulver's) order, more than one-half of the
175,000 shares of stock mentioned in the proposition as
to be issued to Boardman, and Pulver claimed to be owner
and entitled to the one-half of the 175,000 shares less the
amount set aside to meet Olson's claim; and defendants

aver there is a balance of 67,856½ shares of stock which defendant company is ready to issue at any time to whomsoever the court shall say is entitled to receive the same. Appellant Pulver also filed a complaint in intervention, alleging generally that in December, 1898, himself and Yancy, as co-partners, were negotiating with defendants Gardner and Hager for the purchase of 350,000 shares of stock of the proposed corporation, one-half of which was to go·to John Thomas and the other half to Yancy and Pulver, and that defendants Gardner and Hager orally agreed to sell said 350,000 shares of stock to Thomas and Yancy and Pulver upon the terms and conditions subsequently contained in the proposition stated in plaintiff's complaint; that, when said agreement was orally made, Yancy requested Gardner and Hager to put said proposition in writing, and, while the same was about to be put in writing, Yancy requested that the name of Boardman should be placed in the proposition, instead of the names of Yancy and Pulver, giving as a reason for said request that Yancy was financially embarrassed, and did not want any writing or contract in his own name; that intervenor was not present, and Yancy stated that he was representing the firm of Yancy & Pulver in closing up the negotiations; that intervenor never authorized the name of Boardman to be used, instead of Yancy and Pulver, and did not know it had been used until long afterwards; that Boardman had no connection with the negotiations or with the acceptance of the proposition made by Gardner and Hager; that it was understood by all parties that the name of Boardman was used in lieu of Yancy and Pulver, as a mere matter of personal accommodation to Yancy; that during all the negotiations it was understood that Yancy and intervenor should have 175,000 shares of stock to be issued in equal shares to each,—87,500 shares to Yancy

and 87,500 shares to intervenor; that Yancy told intervenor that he made the agreement so that the stock could be issued in the name of Boardman; that intervenor never ratified the arrangement made by Yancy to insert Boardman's name in the agreement. Intervenor also alleges that, while Yancy was his partner in the real estate and mining brokerage business, Yancy sold to intervenor a tract of land in Skagit county, alleged to contain an extensive vein of coal, and very valuable, in consideration of 40,000 shares of stock of the company owned by intervenor; that the deed of conveyance to the land was executed by one Platt Durand and wife in January, 1889, and that intervenor gave Yancy an order for 40,000 shares of the stock, the stock being worth at the time $6,000; that intervenor had never examined the land, and that Yancy's representations as to its containing coal and value were false and fraudulent, and that it was in fact without any considerable value. Intervenor prayed that Yancy and Durand and wife be brought into the action as parties, and that the court decree the sale of the stock to have been to Yancy and intervenor in equal shares; that intervenor have his proportion of the stock issued to himself; that the sale from Yancy to intervenor of the real estate in Skagit county be declared fraudulent. Defendants moved for an order requiring plaintiff to bring into the action Yancy and Durand and wife. A demurrer was sustained to those allegations of the complaint in intervention with reference to the alleged fraudulent sale of lands in Skagit county and the transfer of the 40,000 shares of stock from intervenor to Yancy. Evidence was heard upon the other issues made by the pleadings.

We are not inclined to disturb the court's rulings upon the demurrer to the allegations of fraud and the claim for rescission and further relief stated in the complaint in

intervention relating to the Skagit land transaction. In view of the testimony admitted subsequently, the striking from the answer of the defendants of the allegations in paragraphs 2, 3, and 5 seems to become practically immaterial. The court heard all the testimony on the part of the defendants relative to oral agreements preceding the execution of the written agreement set out in the complaint. The testimony of the witness Yancy and that of the intervenor, Pulver, were substantially in conflict, and there is some conflict between the other witnesses. Yancy maintained that the firm of Yancy & Pulver were brokers, and were to receive 100,000 shares of stock for negotiating the sale of the 350,000 shares made to Thomas and Boardman for $700. Intervenor, Pulver, who testified, also maintained that Boardman's name in the written contract was, for convenience, used in place of Yancy and Pulver, and those shares of stock were to belong to Yancy and Pulver. It appeared as a fact that Thomas paid $350 and Boardman $350, which constituted the $700 paid for the $350,-000 worth of stock. This block of stock seems to have been sold by defendants Gardner and Hager for the purpose of paying debts of the company and procuring the $700 in cash as a working fund to organize the contemplated corporation. Gardner and Hager each, in testifying, declared that he knew nothing of Boardman's connection with the purchase of stock. This was, however, knowledge which it was unnecessary for them to have. They were not interested in the individuals who purchased the stock from Yancy & Pulver, their brokers. The court found that Yancy was the agent of Boardman. The $350 purchase price was paid by Thomas, who advanced the same for Boardman at the request of Yancy, which $350 was paid to Thomas out of rents arising from property owned in Seattle by Boardman, which were collected by

Thomas. After a careful examination of the evidence contained in the record, it is concluded we ought not to disturb the findings of the superior court. The virtual dismissal of the complaint in intervention leaves the rights of the intervenor and Yancy as between themselves undetermined.

The judgment is affirmed.

DUNBAR, FULLERTON, ANDERS and WHITE, JJ., concur.